**ELECTIONS**

CANDIDATES — "SEED MONEY" REQUIREMENT UNDER THE FAIR
CAMPAIGN FINANCING ACT

May 5, 1994

*Mr. Gene Raynor*
*Administrator*
*State Administrative Board*
  *of Election Laws*

You have asked our opinion concerning the interpretation of certain provisions of the Fair Campaign Financing Act (the "Act"), Article 33, §31-1 *et seq.* of the Maryland Code. Specifically, you pose the following questions:

1.   For purposes of satisfying the Act's "seed money" requirement, must eligible private contributions be raised in increments of $250 or less from individual contributors?

2.   If seed money must be raised in increments of $250 or less, may a candidate receive a contribution of greater than $250, or would such a contribution disqualify an otherwise qualified candidate from receiving public funds?

For the reasons set forth below, we conclude as follows:

1.   There is no requirement that seed money be raised in increments of $250 or less from individual contributors. If a contribution exceeds $250, the amount of the excess is simply disregarded when seed money is calculated.

2.   Contributions in excess of $250 do not disqualify an otherwise qualified candidate from receiving public funding. Only the first $250 of an eligible private contribution is eligible for matching funds, however.

# I

## Overview

Originally enacted by Chapter 729 (House Bill 510) of the Laws of Maryland 1974, the Act provided for partial public funding of certain candidates for State and local offices, set limits on campaign expenditures by those candidates, and required those candidates to qualify for public funding by raising an amount of small private contributions called "seed money." The funding mechanism for the Act was a voluntary income tax check-off contributed by taxpayers in the 1970's. *See* Governor's Task Force to Study Campaign Financing, First Report 5-6 (January 1975) (hereafter cited as Task Force Report).[1]

Although the Act has been significantly amended since its enactment, its purpose clause has remained constant:

> The General Assembly of Maryland, recognizing that our system of representative government depends in part on guaranteeing that election campaigns are funded by the people and for the people and on eliminating the corrupting and undemocratic effect of large private contributions, finds and declares that an equitable means of public campaign financing is necessary in these times for the continued effective functioning of representative democracy.

Article §31-1.[2]

Despite this laudable purpose, the Act has yet to be implemented in an election. Instead, the Act has been amended from

---

[1] Interestingly, House Bill 510 as introduced provided for full public funding of elections, the elimination of private contributions, qualifications for public funding by the gathering of signatures on a petition, and funding by way of an annual tax. *See* Task Force Report at 5.

[2] All subsequent statutory references in this opinion are to Article 33.

time to time to delay its implementation. *See* Chapter 787 of the Laws of Maryland 1977; Chapter 263, §1 of the Laws of Maryland 1982. Perhaps the primary reason for the repeatedly delayed implementation was, quite simply, that the original law, covering virtually all State and county elective positions, was unworkable because the Fund was too small. Consequently, the money sat in the Treasury for years earning interest.[3]

In an effort to make the law workable, the General Assembly significantly amended the Act in Chapter 104 of the Laws of Maryland 1986 (House Bill 1781).[4] The revised Act retained the overall scheme for receipt of public financing but limited the allocation of the Fund only to governor/lieutenant governor candidates for the 1990 election.[5] Specifically, the Act now provides that a "candidate," defined as a "governor-lieutenant governor unit," will be eligible for public funding if the candidate raises, after September 1, 1993, 15% of a sum determined by multiplying twenty cents ($0.20) by the population of the State. §31-5(a).[6] This is commonly referred to as the "seed money" requirement. A candidate who applies for and receives public funds may spend no more than

---

[3] The Attorney General advised that the money could not be transferred to the State's general fund. 66 *Opinions of the Attorney General* 56 (1981).

[4] The 1986 amendments also required the State Administrator of Election Laws to promulgate comprehensive regulations regarding the implementation of the Fair Campaign Financing Act. These regulations appear in COMAR 14.02.13.

[5] In 1989 the Act was amended again to delay implementation until the 1994 gubernatorial election. Section 31-10 provides that the provisions of the Act "are of no effect and may not be implemented or enforced after July 1, 1995." Senate Bill 486 of the 1994 Session, for the purpose of continuing the public financing of Governor/Lieutenant Governor elections and repealing the termination provision, failed.

[6] Under the Act, the population of the State is to be determined on January 1, 1994, by the most recent decennial census figure or, if available, a more recent estimate by the State Department of Health and Mental Hygiene. §31-3(b). The population of Maryland as of January 1, 1994, has been projected by the Department of Health and Mental Hygiene to be 4,989,000. Under this estimate, the spending cap is $997,800; the eligibility threshold is $149,670 (15% of $997,800).

the product of twenty cents ($0.20) times the State population per election.  §31-3(a).

Half of the fund is to be distributed to eligible candidates in the Republican and Democratic primary elections.  §31-4(b).  In a contested primary, each eligible candidate is to receive $1 in public contributions for every $2 in eligible private contributions.  §31-5(b)(2).  If a candidate is unopposed in the primary, the candidate is to receive $1 in public contributions for every $3 in eligible private contributions.  §31-5(b)(3).  The other half of the fund (*i.e.*, the half not used for the primary), plus any money left over from the primary is to be distributed "in equal shares" to eligible candidates in the general election, including write-in and petition candidates if otherwise eligible.  §31-5(c).

While the 1986 amendments preserved the general scheme through which a candidate qualifies for public funding – raising seed money and abiding by spending limits – the specific  requirements applicable to seed money were significantly altered.   It is these aspects of the 1986 amendments that have prompted your questions.

## II

## Seed Money

### A.    *Requirements Prior to 1986*

Seed money was originally defined as "a sum of lawfully raised private campaign contributions from individual persons that is the greater of either $250 or 15 percent of the maximum campaign expenditure limit provided under §31-3 for a primary election for the same office."  Former §31-2(l) (1983 Repl. Vol.).  While the term "private campaign contributions" was not defined, the Act made clear that in order to qualify for public funding, the candidate had to satisfy the requirement that "the seed money *consists exclusively of private campaign contributions of not more than $50 from an individual person ....*"  Former §31-5(a)(1) (emphasis added).  Thus, in order to qualify for public funding, the candidate had to raise the

greater of $250 or 15% of the maximum campaign expenditure limit in contributions of $50 or less.[7]

### B.    The 1986 Amendments

During consideration of House Bill 1781 in 1986, the seed money requirement was the object of several amendments. As introduced, House Bill 1781 increased the seed money increment from $50 to $250 and added a new definition of "eligible private contribution." As introduced, that term was defined as "a campaign contribution, or series of contributions, from an individual that *in the aggregate does not exceed $250*." (Emphasis added.) Concomitantly, the definition of "seed money" was amended to essentially cross-refer the defined term "eligible private contribution": Seed money was to comprise a "sum of lawfully raised eligible private contributions that equalled 15 percent of the maximum campaign expenditure limit." The bill then provided that only eligible private contributions would qualify for matching funds. In other words, only contributions by individuals that in the aggregate did not exceed $250 would qualify for matching funds.

Had the bill had been enacted with these provisions as introduced, it would be clear that seed money must be raised in contributions of $250 or less from individuals. However, the initial language of House Bill 1781 was only the beginning of the legislative odyssey.

During committee consideration of the bill, both the definition of "eligible private contribution" and, correspondingly, the provision governing a candidate's qualification were significantly and substantively amended. The term "eligible private contribution" was amended to encompass "*that portion of a contribution*, or series of contributions, from an individual that does not exceed $250." Amendment No. 2, House Bill 1781, First Reading File Bill (March 3, 1986) (emphasis added). Notably, the language limiting the contribution to $250 "in the aggregate" was deleted from the definition. The definition of "seed money" was not amended. Section 31-5, the qualification provision, was amended to provide

---

[7] The $250 figure was not meaningless given the inclusion of various local offices. For example, the campaign expenditure limit for certain county offices was $.01 per person or $500.

that a candidate is entitled to receive a public contribution if "the required seed money has been raised." Tellingly, the requirement that seed money consist exclusively of eligible private campaign contributions of $250 or less was deleted. Finally, the provision on public matching funds limited the availability of these funds to eligible private contributions. In other words, under the definition, only the first $250 of a contribution was considered an "eligible private contribution"; thus, only $250 would be eligible for public matching funds. All of these amendments were incorporated into the final enactment.

These crucial provisions have not been changed since 1986. Thus, §31-2(b) provides as follows: "'Eligible private contribution' means that portion of a campaign contribution, or series of contributions, from an individual that does not exceed $250." The term "seed money" is defined in §31-2(h) as "a sum of lawfully raised eligible private contributions that is 15 percent of the maximum campaign expenditure limit provided under §31-3 for an election." Section 31-5(a)(1) provides that a candidate is entitled to a public contribution if "the required seed money has been raised." Finally, §31-5(b) provides as follows:

> (1) The State Board shall order disbursement of funds, designated for disbursement in the primary, as provided in this subsection.

> (2) Candidates who are opposed in the primary shall receive $1 in public contributions for every $2 in eligible private contributions.

> (3) Candidates who are unopposed in the primary shall receive $1 in public contributions for every $3 in eligible private contributions.

### III

### Effect of Contributions Over $250

In construing the Act as amended, we are guided by the principle that the "cardinal rule of statutory construction is to ascertain and effectuate legislative intention." *State v. Crescent City Jaycees Foundation, Inc.*, 330 Md. 460, 468, 624 A.2d 955 (1993). The starting point of legislative interpretation is the language of the statute itself. However, while the words of the statute are the starting point in discerning legislative intent, they are not necessarily the ending point. For "the plain language meaning rule of construction is not absolute; rather, the statute must be construed reasonably with reference to the purpose, aim, or policy of the enacting body." *Tracey v. Tracey*, 328 Md. 380, 387, 614 A.2d 590 (1992); *Rucker v. Comptroller of the Treasury*, 315 Md. 559, 565, 555 A.2d 1060 (1989); *Kaczorowski v. City of Baltimore*, 309 Md. 505, 513, 525 A.2d 628 (1987). Like a court, we look to the larger context, including the legislative purpose, within which statutory language appears. *Morris v. Prince George's County*, 319 Md. 597, 604, 573 A.2d 1346 (1990).

One might argue that the 1986 amendments were intended merely to streamline certain provisions of the Act, and an inadvertent consequence of this attempt at consistency was the deletion of the provision capping seed money contributions at $250. In other words, it is possible that the General Assembly was focused on linking certain terms like "eligible private contribution" with public matching fund disbursement, and, in achieving this drafting objective, inadvertently deleted the requirement that seed money contributions be limited to $250. While perhaps plausible, such a construction is unsupported by the text or legislative history of the Act.

As a result of the 1986 amendments, in particular the amendment to the definition of "eligible private contribution," the plain language of the Act no longer requires that seed money contributions be raised in increments of $250 or less. This result follows not just from the deletion of language from the prior law but from new language as well: the definition of "eligible private contribution" says explicitly that a *portion* of a contribution that does not exceed $250 may be considered seed money. The plain language thus suggests that a candidate may receive, for example, a $1000

contribution from an individual, the first $250 of which may be counted as seed money and is eligible for a public contribution match.

Moreover, in order to construe a statute in a manner not suggested by its plain language, we need more than mere speculation as to what the Legislature intended. Rather, we must consider any "persuasive evidence including ... amendments that occurred as [the bill] passed through the legislature...." *Wynn v. State*, 313 Md. 533, 539, 546 A.2d 465 (1988) (internal quotation and citation omitted). Here, the amendment process strongly suggests that the critical changes were not the result of inadvertence. That is, as introduced, House Bill 1781 retained a limit on seed money contributions (although that limit was increased in the original bill). Later in the process, however, that precise provision was amended out of the bill. In construing a statute, we may not insert or omit words to give a statute "a meaning not otherwise evident by the words actually used." *Harris v. State*, 331 Md. 137, 145, 626 A.2d 946 (1993). This precept is particularly apt in this case, where the words we would need to insert to reach a contrary conclusion were *deleted* from the law during its consideration.

Finally, and most significantly, it does not frustrate the intent of the General Assembly to read the 1986 amendments to permit the first $250 of contributions that exceed $250 to be counted toward the seed money requirement. The objective underlying the seed money requirement was that candidates show a broad base of public support before qualifying for public financing. Task Force Report at 17.[8] This purpose is equally served by permitting contributions that exceed $250, of which only $250 is considered an eligible private contribution. That is, since only the first $250 of a contribution is considered "eligible," a candidate needs to receive contributions from the same minimum number of contributors as the candidate would if seed money contributions were capped at $250.[9]

---

[8] The 1986 amendments, in general, were not intended to alter that purpose. *See* House Constitutional and Administrative Law Committee, Report on House Bill 1781 (bill intended "to establish a use for the Fund consistent with the Act's original intent and purpose").

[9] For a candidate to raise $149,670 in seed money (*see* note 6 above), the candidate could not have fewer than 599 contributors (599 x

(continued...)

We realize that this opinion differs from earlier advice distributed by the State Administrative Board of Election Laws in its May 1993 Summary of the Fair Campaign Financing Fund. Candidates that have begun raising seed money based on that earlier advice are free to receive additional contributions from prior contributors, keeping in mind that only the first $250 of the contribution is eligible for matching funds.

Inasmuch as we have concluded that contributions that exceed $250 may be counted toward seed money requirements, it logically follows that, in answer to your second question, a contribution that exceeds $250 does not disqualify a candidate from receiving public funding. This conclusion, too, is supported by the definition of "eligible private contribution," which means "*that portion* of a campaign contribution, or series of contributions, from an individual that is $250 or less." §31-2(e). Of course, all contributions to a candidate are also subject to the $4,000 contribution limit to any candidate in a four-year election cycle, as provided in the Fair Election Practices Act, §26-9(d).

## IV

### Conclusion

In summary, our opinion is as follows:

1.    There is no requirement that seed money be raised in increments of $250 or less from individual contributors. If a contribution exceeds $250, the amount of the excess is simply disregarded when seed money is calculated.

---

[9] (...continued)
$250 = $149,750), even if all gave more than $250. It is of no moment for seed money purposes whether those individual contributors each contribute $250 or $1,000 to the candidate, $250 of which is considered seed money. What is relevant is that regardless of the amount of the individual contribution, the same minimum number of contributors is required to satisfy the seed money requirement.

2.    Contributions in excess of $250 do not disqualify an otherwise qualified candidate from receiving public funding.  Only the first $250 of an eligible private contribution is eligible for matching funds, however.

J. Joseph Curran, Jr.
*Attorney General*

Mary O. Lunden
*Assistant Attorney General*

Jack Schwartz
*Chief Counsel*
  *Opinions & Advice*

***Editor's Note:***

The provisions construed in this opinion are currently codified in Article 33, Title 15, the "Public Financing Act."